(No. 1715— )

SPRAGUE DAIRY COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1933.*

DONOVAN, BRAY & GRAY, for claimant.

OTTO KERNER, Attorney General; CARL DIETZ, Assistant Attorney General, for respondent.

Mr. JUSTICE VAUSE delivered the opinion of the court:

This is a claim for damages to and for loss of use of a Chevrolet truck owned by the claimant, resulting from a collision with a passenger automobile, the property of the State of Illinois.

The collision occurred about 6:30 a. m. on December 24, 1930, on Sixteenth Street in Lockport, Illinois, about one hundred (100) feet east of a viaduct over the Santa Fe Railroad tracks and west of a viaduct over the I. & M. Canal. This road is surfaced with gravel at this place. The evidence discloses that coming west on this street after crossing the canal the grade is descending for about 200 feet and the road at the bottom of the incline is somewhat narrow. From this point westwardly to the Santa Fe viaduct, some three hundred feet distant, the road ascends on about a seven per cent (7%) grade. There is a curve in the road on both sides of the viaduct. Claimant's truck was proceeding uphill in a westerly direction on this street, at not over ten miles per hour. At the time the collision occurred and afterward, the truck was about one hundred feet east of the Santa Fe viaduct, was headed west and was entirely on the north or right hand side of the roadway for west bound traffic.

The passenger car which came into collision with the truck at this point was a Chrysler Sedan, owned by the State of Illinois, being driven in an easterly direction on this same

street by Nick Myers, an inmate of the "Old Penitentiary." Myers was assigned to duty as a chauffeur and had driven from the "Old Penitentiary" on the east side of the Des Plaines River over to the State Farm southeast of Stateville Penitentiary on the west side of the Des Plaines River to get Deputy Warden George Erickson for the purpose of conveying him back to the "Old Penitentiary" where the duties of the deputy warden were performed. The deputy did not, however, go back with Myers, but instructed him to return the car to the "Old Penitentiary" and further ordered him to take Erickson's daughter as a passenger and let her off at the depot at Lockport, which was directly on the route back to his ordered destination. A part of Myers' duty was to call for the deputy warden each morning and he traveled this same road most of the time because this route was shorter. The collision resulting in this claim occurred before the sedan had reached the depot where Miss Erickson was to be let out.

After the accident, the State car was on its left hand side of the road. The further testimony is that as one leaves the Santa Fe viaduct going east, the north side of the road is the most traveled, there being rough spots in the south side of the road at that point. There was some snow upon the roadway and the undisputed testimony is that the State car ran more than thirty-three feet after the brakes had been applied before the collision occurred.

One disinterested witness testified to a portion of the occurrences shortly before the accident. This witness was proceeding in the same direction as the State car. The State car passed the witness shortly before reaching the Santa Fe viaduct traveling, in the opinion of the witness, between fifty and sixty miles an hour. The president of the claimant visited the scene of the accident before the cars had been moved. He testified he was able to trace the tracks of the State car from the point where it had left the Santa Fe viaduct to the point of the collision and these tracks were north of the center of the road and at no point from the leaving of the viaduct to the point of the collision were there any tracks of the State car on the south side of the road; that for a distance of about thirty-three feet the tracks showed dark oily markings on the snow.

Under the evidence in this case it seems clear that the convict-driver of the State car, at the time the accident occurred was performing labor of a character which was authorized by statute (Par. 44, Chapter 108, Smith-Hurd Stat., 1931) and which had been assigned to him by his custodian.

The general rule is well established that the doctrine of *respondiat superior* does not apply to the State in the exercise of its governmental functions.

This court has, however, recognized exceptions to the general rule of non-liability above referred to, where the injuries complained of are directly attributable to grossly reckless, wanton or wilful acts on the part of a servant of the State and the claimant is free from all contributory negligence in connection with the injury. The driver of the State car in the present case was not a servant of the State in the ordinarily accepted meaning of that term, but he was being used as an instrumentality of the State and he had the power of voluntary action. We are of the opinion that the peculiar facts of this case bring it within this exception.

The driver of the State car was proceeding down a seven per cent (7%) grade on a road with which he was thoroughly familiar, at 6:30 o'clock, on a hazy morning in December, at a speed of not less than forty miles per hour at a place in the road where his view before he came over the viaduct was obscured (contrary to the provisions of Par. 223, Chapter 121, Smith-Hurd Stat., 1931) and when he did come over the viaduct the undisputed testimony is that he traveled upon his left hand side of the road for over one hundred feet (contrary to the provisions of Par. 159, Chap. 121, Smith-Hurd Stat., 1931) and collided with the claimant's truck which had almost stopped on its right hand side of the road.

The undisputed evidence is that the amount of Two Hundred Seventy-four Dollars and Seventy-nine Cents ($274.79) was reasonably necessary to repair claimant's truck as a result of the collision. We believe a fair damage for loss of use of the truck, under the record, would be One Hundred Dollars ($100.00).

We therefore award the claimant the sum of Three Hundred Seventy-four Dollars and Seventy-nine Cents ($374.79).